UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAMES PUGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-04224-JRS-MPB |
| | ) | |
| WENDY KNIGHT, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**Order Denying Motion for Summary Judgment
and Directing Further Proceedings**

Plaintiff James Pugh, an inmate of the Indiana Department of Correction ("IDOC"), brought this lawsuit pursuant to 42 U.S.C. § 1983 alleging that he has not received constitutionally adequate treatment for a severely injured finger. Dkt. 15. The defendants move for summary judgment arguing that Mr. Pugh failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before he filed this lawsuit. For the following reasons, the defendants' motion for summary judgment is denied and the defendants are directed to show why summary judgment should not be entered in favor of the plaintiff on the exhaustion defense.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing

that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).

## II. Facts

A. *The Grievance Process*

The IDOC maintains an Offender Grievance Process. *See* Dkt. 30-1, p. 2 ¶ 6. The purpose of the Offender Grievance Process is to provide administrative means by which inmates may resolve concerns and complaints related to their conditions of confinement, including complaints of inadequate medical care. *Id.* ¶ 8.

Pursuant to the Grievance Process, an inmate must first attempt to resolve a complaint informally and provide evidence of the attempt, such as correspondence or a Request for Interview form. *Id.* p. 2-3 ¶ 9. Specifically, the Grievance Process states:

> Before filing a grievance, an offender is required to attempt to resolve a complaint informally and provide evidence (e.g., "To/From" correspondence, State Form 36935, "Request for Interview") of the attempt. The offender may do this by discussing the complaint with the staff member responsible for the situation or, if there is no such single person, with the person who is in charge of the area where the situation occurs.

Dkt. 30-1 p. 19-20.

If the inmate is unable to informally resolve his complaint, he must submit a completed State Form 45471, "Offender Grievance," no later than 10 business days from the date of the incident giving rise to the complaint or concern to the Offender Grievance Specialist. Dkt. 30-1 p. 3 at ¶ 10. With regard to Offender Grievances, the Grievance Process provides:

2

> Each completed State Form 45471, "Offender Grievance," must meet the following standards:
>
> 1. Each part of the form shall be completed;
> 2. It shall be written legibly;
> 3. It shall avoid the use of legal terminology;
> 4. It shall raise the same issue that the offender raised in trying to get the informal resolution and document the attempts at informal resolution;
> 5. It shall relate to only one event or issue;
> 6. It shall be signed, dated, and submitted by an offender on his or her own behalf, although it can be written by another offender or staff member if the offender is unable to do so due to a physical, language, or other problem;
> 7. It shall explain how the situation or incident affects the offender; and,
> 8. The offender shall suggest appropriate relief or remedy.

Dkt. 30-1 p. 20-21. The Offender Grievance form itself directs: "Provide a brief, clear statement of your complaint or concern. Include any information that may assist staff in responding to your grievance" *See* Dkt. 30-1 p. 28.

If the inmate is dissatisfied with the grievance response or receives no grievance response, he may appeal the response by completing the appropriate sections of State Form 45473, "Grievance Appeal." Dkt. 30-1 p. 5 ¶ 20. The Grievance Process provides:

> Appeals must address the basic matter of the grievance. The appeal may contain additional facts or information regarding the original issue and may raise concerns regarding the response from the previous level, but it shall not raise new or unrelated issues. The offender must state why the previous response was unacceptable, thereby establishing a rationale for the appeal and the basis for a reinvestigation. The appeal must be legible, signed, and dated by the offender, unless the offender cannot sign the appeal and a staff member has indicated why the offender was unable to sign.

Dkt. 30-1 p. 23. If, after receipt of the appeal response, the inmate is still dissatisfied, or no response is received within the time frame, he may appeal to the Department Offender Grievance Manager. *Id.* p. 5 ¶ 23. Exhaustion of the grievance process requires an inmate to attempt an informal resolution, to file a formal grievance, file an appeal with the Warden/Designee, and to file a second appeal with Offender Grievance Manager. *Id.* p. 6-7 ¶ 28.

B. *Mr. Pugh's Use of the Grievance Process*

On March 23, 2019, Mr. Pugh submitted a "Request for Healthcare," and he wrote "Informal Grievance" at the top. *Id.* p. 7 ¶ 33, p. 27. The Request for Healthcare was directed to Lisa Bergeson. *Id.* In the Request for Healthcare, Mr. Pugh asserted, among other things, that a specialist recommended that he return to see the specialist for his injured finger, and that Wexford had instead recommended four physical therapy visits. *Id.* The response, dated March 25, 2019, stated that Dr. Savino had reviewed the information from the physical therapist, and a consultation request had been submitted and processed. *Id.* The medical records also indicated that Mr. Pugh had undergone a nursing visit on March 23, 2019, during which he had been referred to a provider. *Id.* The provider visit was expected to allow a doctor to review the results of the consultation request. *Id.*

Mr. Pugh filed an Offender Grievance form on April 4, 2019. Dkt. 30-1 p. 8 ¶ 34, p. 28. In the Grievance, Mr. Pugh claimed that he could not make a fist with his right hand and that he had pain. *Id.* He stated that the physical therapist said that she could not help him and that he should be seen by a specialist. *Id.* He asked to be sent back to an outside specialist. *Id.*

Robert Stafford, the Offender Grievance Administrator at the time, emailed HSA Chris Hufford requesting a response to the Grievance. Dkt. 30-1 p. 8 ¶ 36-37, p. 29. Mr. Hufford stated, among other things, that Mr. Pugh's request to be seen by a specialist had been communicated to the site medical provider before the healthcare request had been received and processed on March 25, 2019. *Id.* On April 9, 2019, Mr. Stafford responded to the Grievance, reiterating the information Mr. Hufford had provided. Dkt. 30-1 p. 9 ¶ 37, p. 30.

Mr. Pugh filed a Grievance Appeal on April 9, 2019. Dkt. 30-1 p. 9 ¶ 38, p. 31. In the Appeal, he stated that the only onsite treatment he had been receiving was Tylenol and instructions

4

to continue to perform the exercises as the orthopedic physician had recommended. *Id.* He indicated that he had been to four physical therapy sessions and that the treatment was not working. *Id.* He again asked to see an outside orthopedic surgeon. *Id.* The Grievance Appeal was not directed to any particular individual and did not mention a policy or procedure of Wexford to deny evaluations by outside physicians. *Id.*

The response to the Grievance Appeal, dated April 12, 2019, stated that the Level I response was correct and that Mr. Pugh should continue with the medically recommended activities. Dkt. 30-1 p. 9-10 ¶ 39, p. 32.

### III. Discussion

The defendants seek summary judgment arguing that Mr. Pugh failed to exhaust his available administrative remedies because his grievances did not specifically address either Dr. Savino or Wexford. The defendants go on to argue that, even if Mr. Pugh successfully exhausted his administrative remedies as to either Dr. Savino or Wexford, one of these defendants will still have to be dismissed because the IDOC policy requires the inmate to address each grievance separately.

The PLRA requires that a prisoner exhaust his available administrative remedies before bringing suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dole v.*

*Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) ("'To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). Thus, "to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 39, 397 (7th Cir. 2004). It is the defendants' burden to establish that the administrative process was available. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it.").

The defendants do not argue that Mr. Pugh failed to complete the Grievance Process regarding his complaint that he was not getting appropriate care for his injured finger. Instead, the defendants argue that Mr. Pugh still failed to exhaust his available administrative remedies because he did not name them specifically in his grievances. But the Supreme Court has explained that notice to an individual that he might be sued "has not been thought to be one of the leading purposes of the exhaustion requirement," and that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Jones v. Bock,* 549 U.S. 199, 219 (2007) (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). Instead, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218.

The defendants assert that under the Grievance Process, an inmate must specifically grieve each individual staff member or entity with which the offender has a complaint, providing the specifics of the persons or entities' actions or inactions. Dkt. 30-1 p. 7 ¶ 29. But the defendants do

not point to a specific section of the Offender Grievance Process that contains such a requirement, and the Court's review of the Grievance Process reveals no such requirement. First, with respect to an inmate's attempt at informal resolution, the Grievance Process provides:

> Before filing a grievance, an offender is required to attempt to resolve a complaint informally and provide evidence (e.g., "To/From" correspondence, State Form 36935, "Request for Interview") of the attempt. The offender may do this by discussing the complaint with the staff member responsible for the situation or, if there is no such single person, with the person who is in charge of the area where the situation occurs.

Dkt. 30-1 p. 19-20. While this provision suggests that an inmate may discuss his complaint with the responsible staff member, it does not require it and allows the inmate to discuss the situation with someone else who is in charge. The defendants provide no explanation for why Mr. Pugh's health care request sent to Lisa Bergeson did not satisfy this requirement.[1] Next, the Grievance Process lists the requirements of a formal grievance as follows:

> 1. Each part of the form shall be completed;
> 2. It shall be written legibly;
> 3. It shall avoid the use of legal terminology;
> 4. It shall raise the same issue that the offender raised in trying to get the informal resolution and document the attempts at informal resolution;
> 5. It shall relate to only one event or issue;
> 6. It shall be signed, dated, and submitted by an offender on his or her own behalf, although it can be written by another offender or staff member if the offender is unable to do so due to a physical, language, or other problem;
> 7. It shall explain how the situation or incident affects the offender; and,
> 8. The offender shall suggest appropriate relief or remedy.

---

[1] The defendants also suggest, but do not argue, that Mr. Pugh failed to comply with the Grievance Process when he filed a health care request form and not a request for interview form. But, the Grievance Process identifies a Request for Interview form as an example of an informal attempt at resolution, not as the exclusive manner to do so. Dkt. 30-1 p. 19. Moreover, even if a Request for Interview form is required, Mr. Pugh's formal grievance was accepted, waiving strict compliance with the Grievance Process. *See Riccardo v. Rausch*, 375 F.3d 521, 523-24 (7th Cir. 2004) (when a state treats a filing as timely and resolves it on the merits, the grievance has served its function).

Dkt. 30-1 p. 20-21. Nothing in this list requires the inmate to specifically name the responsible individuals.

In short, because the Grievance Process did not require Mr. Pugh to name the specific individuals responsible for his alleged lack of medical care, the defendants have failed to show that he did not exhaust his available administrative remedies with respect to his claims against them. *See Mason v. Corizon, Inc.*, 2018 WL 1210949, at *3 (S.D. Ind. Mar. 8, 2018) (explaining that the IDOC grievance policy does not require an inmate to name a specific individual); *Naylor v. Williams*, 2018 WL 419984, at *2 (S.D. Ind. Jan. 16, 2018) (addressing an earlier version of the IDOC grievance policy and concluding "the grievance policy does not require an inmate to name corrections officers in grievances in order to exhaust administrative remedies"); *cf. Dye v. Kingston,* 130 F. App'x 52, 55 (7th Cir. 2005) ("We and the majority of the circuits have never endorsed … the defendants' invitation to engraft onto § 1997e(a) a requirement that defendants to a civil suit be first named in an inmate's prison grievance.")

The defendants also argue that if Mr. Pugh did exhaust his available administrative remedies, he necessarily could have done so as to only one, but not both, of them because the Grievance Process requires a grievance to relate to only one event or issue. But one event or issue may involve multiple correctional officials or entities. Thus, the fact that a grievance must relate to only one event or issue does not mean that an inmate must grieve each person involved in that event or issue separately.

In short, it is undisputed that Mr. Pugh exhausted his available administrative remedies regarding his medical care complaints in this case. In addition, while Mr. Pugh did not specifically name Dr. Savino or Wexford in his grievances, the defendants have identified no requirement of the Grievance Process that he do so or any requirement that he file separate grievances against

8

each person or entity involved in his medical care. Accordingly, the defendants are not entitled to summary judgement on the affirmative defense that Mr. Pugh failed to exhaust his available administrative remedies.

### IV. Conclusion and Rule 56(f) Notice

For the foregoing reasons, the defendants' motion for summary judgment on the affirmative defense that Mr. Pugh failed to exhaust his available administrative remedies before he filed this lawsuit, dkt. [29], should never have been filed and is **denied**. Moreover, the current record before the Court shows that Mr. Pugh is entitled to summary judgment on the defendants' affirmative defense of exhaustion. Therefore, **pursuant to Rule 56(f)(1), the Court gives the defendants notice of its intent to grant summary judgment in the plaintiff's favor on this issue**. The defendants have **through August 10, 2020**, in which to respond to the Court's proposal. Alternatively, the defendants may withdraw the affirmative defense by this date.

**IT IS SO ORDERED.**

Date: 7/15/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JAMES PUGH
254394
PENDLETON - CORRECTIONAL INDUSTRIAL FACILITY
CORRECTIONAL INDUSTRIAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel