UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES PUGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cv-04224-JRS-MPB |
| ) | |
| WENDY KNIGHT, et al. ) | |
| ) | |
| Defendants. ) | |

**Order Granting Motions for Summary Judgment
and Directing Entry of Final Judgment**

Plaintiff James Pugh, an inmate at Correctional Industrial Facility ("CIF"), brings this action pursuant to 42 U.S.C. § 1983 alleging that he has been denied treatment for an injured finger. He sues defendants Dr. Savino and Wexford of Indiana, LLC (the "Wexford Defendants") and Warden Wendy Knight. The defendants have moved for summary judgment. For the following reasons, the motions for summary judgment are granted.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 572-73 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

Mr. Pugh did not respond to the Wexford Defendants' motion for summary judgment. Accordingly, facts alleged in that motion are deemed admitted so long as support for them exists in the record. *See* S.D. Ind. Local Rule 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"). This does not alter the summary judgment standard, but it does "[r]educe[] the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

## II. Facts

In late August of 2018, while he was working at CIF, an industrial fan fell toward Mr. Pugh and he raised his hand to block it, injuring his finger. Dkt. 56-1 p. 21, Pugh Dep. at 81:13-20. He was taken to the medical unit where a nurse wrapped his finger and gave him a box of Tylenol. *Id.* p. 11, Pugh Dep. at 39:15-17; Dkt. 56-2 p. 95-97.

Shortly after the accident, Mr. Pugh's hand was x-rayed and he saw Dr. Savino, who examined his hand and provided Mobic for his pain. *Id.* p. 106-07, 117-19. She also submitted an outpatient request for Mr. Pugh to be seen for a surgical evaluation. *Id.* p. 133-35. The request was approved, and Mr. Pugh later saw NP Joseph Hutchinson at Eskenazi Hospital. *Id.* p. 4-8. NP Hutchinson diagnosed Mr. Pugh with bony mallet finger,[1] gave him an extension splint, and requested to see him back in three to four weeks. *Id.* At the follow-up appointment the next month, Mr. Pugh's treatment was switched to nighttime splinting only and he was given exercises for his hand. *Id.* p. 20-21.

Mr. Pugh saw Dr. Savino twice more in the next few months. At each appointment, she examined his hand. *Id.* p. 226, 258. Dr. Savino also ordered pain medication and x-rays, and she submitted further outpatient requests for Mr. Pugh to be seen at Eskenazi. Dkt. 56-2 p. 200, 225, 258. Dr. Mitcheff, Wexford's regional medical director, did not approve the first request, but he asked for x-rays, which Dr. Savino ordered. *Id.* p. 220, 225. Dr. Mitcheff approved Dr. Savino's next outpatient request, which included the x-rays. *Id.* p. 237. At his follow-up at Eskenazi, Mr.

---

[1] Mallet finger is "an injury to the thin tendon that straightens the end joint of a finger or thumb….[T]his injury can happen … when an unyielding object … strikes the tip of a finger or thumb and forces it to bend further than it is intended to go. As a result, you are not able to straighten the tip of your finger on your own." American Academy of Orthopedic Surgeons, *Mallet Finger*, https://orthoinfo.aaos.org/en/diseases--conditions/mallet-finger-baseball-finger/ (last visited June 7, 2021).

Pugh was shown the same exercises for his hand that he was given at his last visit. *Id.* p. 56. When Dr. Savino later requested a further outpatient follow-up, Dr. Mitcheff directed that Mr. Pugh work on the recommended exercises with a physical therapist at the prison. *Id.* p. 435. Mr. Pugh had four physical therapy visits in the next two months. Dkt. 56-1 p. 16, Pugh Dep. at 59:12-16.

After his physical therapy was completed, there is no record that Mr. Pugh complained about his pain until a nurse visit in September of 2019. *See* Dkt. 56-2, p. 294-95. The nurse referred Mr. Pugh to Dr. Savino, who examined his hand and ordered naproxen for his pain, repeat x-rays, and that he return to the clinic in two weeks for an outpatient request. *Id.* When Mr. Pugh returned, Dr. Savino submitted an outpatient request to have an MRI performed on his right index finger. *Id.* p. 304-09. Dr. Mitcheff responded that Mr. Pugh should instead complete more physical therapy and return for further evaluation. *Id.* p. 313. After four physical therapy visits, Mr. Pugh was advised to follow up with the onsite physician. *Id.* p. 314-16; 321-23.

When Mr. Pugh next saw Dr. Savino, she evaluated his hand and noted that his range of motion had not changed much after the physical therapy. *Id.* p. 329-30. She submitted another outpatient request for an MRI. *Id.* Dr. Mitcheff denied the MRI and ordered that Mr. Pugh continue onsite exercises. *Id.* p. 337. Dr. Savino submitted another outpatient request a month later which was approved. *Id.* p. 368-69. When Mr. Pugh returned to Eskenazi, the specialist sent him for occupational therapy and recommended non-surgical treatment. *Id.* p. 82-83. Dr. Savino submitted an outpatient request for Mr. Pugh to be evaluated by occupational therapy. *Id.* p. 354. The request was approved, but Mr. Pugh refused the visit because he did not want to be exposed to COVID-19 at the hospital and be quarantined when he returned to CIF. Dkt. 56-1 p. 19, Pugh Dep. at 72:21-73:4.

Warden Knight was not directly involved in Mr. Pugh's medical care. Dkt. 56-1, p. 25-26, Pugh Dep. at 94:21-95:8. She never prevented him from submitting a complaint, and there is no evidence that any of Mr. Pugh's medical requests went to her personally. *Id.* p. 26, Pugh Dep. at 97:17-22. There is also no evidence that Warden Knight was aware of his condition or had the power to overrule decisions by Mr. Pugh's medical providers. *Id.* p. 26, Pugh Dep. at 98:7-11, 99:17-100:5.

### III. Discussion

Mr. Pugh's claims against Dr. Savino, Wexford, and Warden Knight are that they were deliberately indifferent to his finger injury in violation of his Eighth Amendment rights. Each seeks summary judgment on this claim.

**A. Dr. Savino**

Mr. Pugh alleges in his complaint that Dr. Savino failed to treat him for his finger injury in violation of his Eighth Amendment rights.

"'To determine if the Eighth Amendment has been violated in the prison medical context, [the Court performs] a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition.'" *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021) (quoting *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc)).

Dr. Savino does not dispute that Mr. Pugh's injured finger was a serious medical condition but argues that she was not deliberately indifferent to his condition. "[D]eliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Donald v. Wexford Health Sources, Inc*., 982

5

F.3d 451, 458 (7th Cir. 2020) (internal quotations and citations omitted). A defendant must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)). *See also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

It is undisputed that when Dr. Savino saw Mr. Pugh, she examined his hand and provided pain medication and diagnostic testing. She also submitted several requests for Mr. Pugh to be seen by orthopedic specialists, many of which were granted. Mr. Pugh saw specialists several times, and they ordered physical therapy, which Mr. Pugh received. There is thus no evidence that Dr. Savino consciously disregarded a substantial risk of harm to Mr. Pugh or that she substantially departed from professional judgment in treating him. Dr. Savino is therefore entitled to summary judgment on Mr. Pugh's claims.

**B. Wexford**

Because Wexford acts under color of state law by contracting to perform a government function, *i.e.*, providing medical care to correctional facilities, it is treated as a government entity for purposes of § 1983 claims. *Walker v. Wexford Health Sources*, 940 F.3d 954, 966 (7th Cir. 2019). This means that Mr. Pugh must provide "evidence that a Wexford policy, practice, or custom caused" the constitutional violation alleged. *Id.* A policy, practice, or custom can be shown by evidence that (1) the acts alleged resulted from an express "policy statement, ordinance,

regulation, or decision officially adopted and promulgated by that body's officers"; (2) the deprivation resulted from a governmental "custom" even though the custom had not received formal approval. . ."; or (3) the policy or custom was made by an official decision-maker *Glisson v. Ind. Dept. of Corr.*, 849 F.3d 372, 379 (2017) (internal quotations omitted).

Mr. Pugh has submitted no evidence of an express policy promulgated by Wexford's officers or of a widespread custom on Wexford's part. Mr. Pugh may be understood to allege that Dr. Mitcheff's denials of outpatient referrals show a policy or custom of an official decision-maker. But even if Dr. Mitcheff's decisions constituted deliberate indifference, "isolated incidents" such as these "do not add up to a pattern of behavior that would support an inference of a custom or policy." *Shields v. Ill. Dept. of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014). In fact, it is undisputed that Dr. Mitcheff granted several of Dr. Savino's requests. On some occasions, he denied the request but asked for additional information or further physical therapy before ultimately approving the referral. These occasional denials are not sufficient to show that Wexford had a policy of denying care, and Mr. Pugh has presented no evidence regarding any other similar denials of care by Wexford. Accordingly, Wexford is entitled to summary judgment.

### C. Warden Knight

Mr. Pugh alleged in the complaint that Warden Knight knew that he was complaining of ongoing pain but denied his grievance and in this way denied him treatment. Warden Knight argues that she was not directly involved in Mr. Pugh's medical care. "[I]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action

7

unless he caused or participated in an alleged constitutional deprivation.... A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.")). Mr. Pugh admitted at his deposition that he had no evidence that Warden Knight was involved in his care or was even aware of it. Accordingly, she is entitled to summary judgment on his claims.

### IV. Conclusion

For the foregoing reasons, the defendants' motions for summary judgment, dkt. [54], and dkt. [58], are **granted**. Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 6/8/2021

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JAMES PUGH
254394
PENDLETON - CORRECTIONAL INDUSTRIAL FACILITY
CORRECTIONAL INDUSTRIAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel